Cite as 2025 Ark. App. 445

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-24-582

| | |
|---|---|
| EVARISTO CONTRERAS-LOPEZ<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered September 24, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CR-22-26]<br><br>HONORABLE CATHLEEN V. COMPTON, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Evaristo Contreras-Lopez appeals the decision of a Pulaski County Circuit Court jury finding him guilty of one count of second-degree sexual assault and sentencing him to twenty years in the Arkansas Division of Correction. Contreras-Lopez was acquitted on the charge of rape but convicted of the lesser-included offense. On appeal, Contreras-Lopez argues that there was no rational basis to support instructing the jury on the offense of second-degree sexual assault. We affirm.

At trial, the jury heard the following evidence. In June 2020, fifteen-year-old MC was walking around her neighborhood, occasionally stopping to chat with people, when she came across a man on a porch. He invited her inside the house and offered her a beer. She initially declined and told him she was fifteen but then agreed. She had two beers with the man while

sitting on his living room couch. While there, the man began to touch her thighs, side, and breasts, which made her feel uncomfortable. When MC stood up to leave, the man locked the door, they returned to the couch, and he continued touching her. She told him to stop multiple times; she tried pulling his hands away. He performed oral sex on her while holding her down. He then took his pants off and forcibly inserted his penis into her vagina. After about thirty seconds of intercourse, he noticed she was crying and stopped and began to apologize. She was able to run out of the house into the street where she saw a neighbor she recognized. MC told the neighbor what happened, and the neighbor called the police. MC was transported to the hospital.

On cross-examination, MC testified that she had smoked marijuana before going for her walk, she had drunk two beers while with her assailant, and the experience was "kind of blurry." But when initially interviewed, she reported that the man was Hispanic, tall, of medium build, and over twenty-five years old. MC also said that he had brown hair and "a lot of wrinkles, like stress wrinkles." Defense counsel pointed out that the defendant sitting at the table was neither tall nor wrinkly and had brown hair, and MC agreed with that assessment. When the prosecutor tried to rehabilitate MC, asking, "How do you know that that man sitting there right there is the one that did this to you? Do you remember his face?" MC replied, "No."

Taylor Ruple, the nurse practitioner who examined MC at the hospital, testified as an expert witness in pediatric sexual assault. Ruple collected swabs for testing from MC's mouth, vagina, rectum, and neck (where there was a hickey). The clothes MC had been

wearing were taken and secured in a paper bag and stored with the rape kit for evidence. Ruple noted that MC had a normal genital exam with no injuries or anything of note to relate to the assault.

Detective Cindy Harbour also testified. During the investigation, she obtained the address where the rape occurred. She tracked down the owner of the home and learned he had been out of town at the time of the event. Discussion with the owner led her to Contreras-Lopez, the owner's brother-in-law, who was feeding the dog at the house in the owner's absence. Harbour testified that in her interview with Contreras-Lopez, he told her he had never seen MC before, did not know her, and had nothing to do with her. Harbour took a photo of Contreras-Lopez during the interview. She included his photo in a lineup of twenty other Hispanic-looking men that matched the description MC had provided police. MC quickly and conclusively identified Contreras-Lopez as her assailant.

KaRyn Terry, the forensic serologist at the Arkansas State Crime Laboratory, testified that she processed the sexual-assault kit and clothing taken from MC at the hospital and found sperm cells on the crotch of MC's pants. Lindsay Heflin, the crime-lab DNA analyst, testified that there was male DNA found on the rape kit's vaginal, oral, and rectal swabs but not enough to tell whose DNA it was. The DNA from the neck swab, however, matched that of Contreras-Lopez. Heflin said there was no foreign DNA on the pants sample she received.

At the close of the State's case, the parties discussed jury instructions. The State requested the second-degree sexual-assault instruction. The defense objected. The defense explained that the case was never about whether MC was raped, a fact they did not

controvert, but instead was one of identity. In other words, the defense agreed MC was raped, but it was not by Contreras-Lopez. According to the defense, this meant the lesser-included-offense instruction was unnecessary.

When asked whether there was a rational basis for the lesser-included offense, the State explained candidly that the evidence of penetration was not as strong as the evidence of sexual contact. Specifically, the State pointed to the normal genital examination and the absence of Contreras-Lopez's DNA on all swabs except the neck swab. In light of these findings, the State reasoned that the jury might doubt penetration had occurred but could still be persuaded that some form of sexual contact took place, thereby justifying an instruction on second-degree sexual assault.

The jury ultimately acquitted Contreras-Lopez of the rape charges but found him guilty of second-degree sexual assault. On appeal, Contreras-Lopez argues that there was no rational basis to support issuing the instruction on second-degree sexual assault.

Under Arkansas Code Annotated section 5-1-110(b)(1) (Repl. 2013), a defendant may be convicted of a lesser-included offense if the lesser-included offense would require proof of the same or fewer elements than the charged offense. Second-degree sexual assault by forcible compulsion, Ark. Code Ann. § 5-14-125(a)(1) (Supp. 2019), is a lesser-included offense of rape by forcible compulsion, Ark. Code Ann. § 5-14-103(a)(1) (Repl. 2013), because both crimes include the element of forcible compulsion, and the sexual intercourse or deviate sexual activity required for rape necessarily involves "sexual contact," which is an element of sexual assault. *X.O.P. v. State*, 2014 Ark. App. 424, at 3, 439 S.W.3d 711, 713.

Arkansas Code Annotated section 5-1-110(c) provides that a circuit court is obligated to instruct the jury on a lesser-included offense when "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him or her of the included offense."

Contreras-Lopez argues that there was no rational basis to give the instruction here because his defense is one of absolute innocence. He highlights counsel's statements in closing argument where counsel maintained Contreras-Lopez's absolute innocence, and he cites *Doby v. State*, 290 Ark. 408, 412, 720 S.W.2d 694, 696 (1986).

In *Doby*, the defendant was charged with and convicted of possession of a controlled substance with intent to deliver and theft by receiving a pistol. At trial, Doby testified and completely denied he possessed any drugs or a gun. Despite denying possessing any drugs at all, Doby requested an instruction on the lesser crime of possession of a controlled substance. The supreme court noted that this "was a case of all or nothing." *Id.* at 414, 720 S.W.2d at 697. The supreme court reasoned that Doby was not entitled, as a matter of law, to the lesser-included-offense instruction of possession when the evidence was so irreconcilable.

We do not agree with Contreras-Lopez that *Doby* demands reversal here. The key takeaway from *Doby* is that it is the evidence presented, not the defense strategy, that is the focus of the inquiry. In *Doby*, "[the officers'] testimony so sharply conflicted with Doby's that it would not be reasonable to expect a jury to pick and choose and come up with a finding of a lesser offense when to do so would require a finding that Doby was a liar and the officers liars in part." *Id.* at 412, 720 S.W.2d at 696; *see also Burks v. State*, 2022 Ark. App. 494, at 19,

5

657 S.W.3d 180, 190 ("A defendant's all-or-nothing strategy does not dictate how the trial court instructs the jury."). As the supreme court explained in *State v. Jones*,

> Plainly, section 5-1-110(c) does not delegate the decision regarding the propriety of a lesser included offense instruction to the defendant, but requires the trial court to determine whether the proffered instruction concerns a lesser included offense and, if so, whether a rational basis exists for a verdict acquitting the defendant of the greater offense and convicting him of the lesser. . . . [T]he General Assembly's purpose for this provision was to authorize the trial court "to refuse to instruct on an included offense when the evidence mandates either conviction of the greater offense or acquittal."

321 Ark. 451, 455, 903 S.W.2d 170, 173 (1995) (quoting commentary to Ark. Stat. Ann. § 41-105 (Repl. 1977), codified at Ark. Code Ann. § 5-1-110(c)).

Here, there was a rational basis for a verdict acquitting Contreras-Lopez of the greater offense while still convicting him of the lesser-included offense. The State even acknowledged the shortcomings of its own evidence specifically regarding rape. But MC also testified that Contreras-Lopez touched and licked her breasts by forcible compulsion. The operative difference between rape, *see* Ark. Code Ann. § 5-14-103(a)(1), and second-degree sexual assault is that the latter offense involves *sexual contact* with a minor, *see* Ark. Code Ann. § 5-14-125(a)(1), which means "any act of sexual gratification involving the touching, directly or through clothing, of the . . . breast of a female[.]" Ark. Code Ann. § 5-14-101(11) (Supp. 2019). The circuit court did not abuse its discretion in giving the instruction on the lesser-included offense.

Affirmed.

HARRISON and TUCKER, JJ., agree.

*The James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.