510

James D. FLADUNG *v.* STATE of Arkansas

CR 87-7                                    730 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered June 22, 1987

*Thomas E. Brown*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was convicted of attempted capital murder and sentenced as a habitual offender to imprisonment for sixty years. He contends the court erred in (1) failing to instruct on lesser included offenses, (2) admitting prosecution evidence of a weapon test of which he had insufficient notice, (3) allowing the policeman who conducted the test to testify as an

expert witness, and (4) admitting evidence of previous offenses for the purpose of applying the habitual criminal statute, when inadequate notice was provided appellant those prior offenses would be offered. We conclude it was error to refuse to instruct on lesser included offenses and, on that point, we reverse.

Before turning to appellant's arguments, we first discuss the essential facts leading to the charges against appellant. Appellant was stopped by Arkansas State Trooper Duran because appellant's car had one headlight out. Appellant got out of his car and approached the state police vehicle. Duran asked to see appellant's driver's license. Appellant said the license was not on his person, and he returned to his own vehicle and began to grope under the seat on the passenger side. When he turned to face Duran, appellant was holding a pistol. At this point, the testimony diverges. Appellant says he realized that if the trooper found the pistol he, the appellant, would be in trouble, so he pointed it in the air and began to explain that the pistol did not work. He said Duran grabbed for the pistol and it discharged, but that he did not point it at Duran and had no intention whatever of harming him.

Duran's testimony was that, when appellant turned back towards him with the pistol, appellant was in a crouched position, aiming the pistol at Duran's torso, and was saying something unintelligible. Duran further testified that appellant pulled the trigger at least one time, and probably twice, but that the pistol misfired; Duran was able to wrest the pistol from appellant, and thereafter arrested him.

In his first point for reversal, appellant contends that he sought instructions on the lesser included offenses of aggravated assault and assault in the first degree, claiming that the jury need not have believed he had the premeditated and deliberated purpose of killing Duran. He argues that, where there is the slightest possibility that a lesser included offense may have been committed, we will require the instruction, citing *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980).

The State responds, stating the trial court is not obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. Here, the State asserts that no rational basis existed for lesser included

offenses because appellant denied pulling the trigger on the weapon, and stated he had no intention to utilize the weapon against Officer Duran. In reaching this conclusion, the State misapplies the applicable law on when lesser included instructions must be given by a trial court. We discussed this subject in some detail in our recent case of *Doby* v. *State*, 290 Ark. 408, 720 S.W.2d 694 (1986).

In *Doby*, we held that, when a defendant's defense is that he or she is entirely innocent of any crime, then no rational basis exists to instruct the jury on a lesser included offense because the only issue for the jury is whether the defendant is guilty as charged. The underlying facts in *Doby* illustrate the type situation where a lesser included instruction was found to be inappropriate. Doby was convicted of possession of a controlled substance with intent to deliver.[1] At trial and on appeal, Doby argued the court was wrong in refusing to instruct the jury that it could find him guilty of the lesser crime of "possession of a controlled substance." We rejected Doby's contention because his defense was altogether premised on the fact that he possessed no drugs whatsoever.

We alluded, in *Doby*, to our earlier case of *Roberts* v. *State*, 281 Ark. 218, 663 S.W.2d 178 (1984). There, Roberts was charged with burglary and theft of property. This court held the lower court correctly denied a lesser instruction on theft by receiving because Roberts' defense was one of alibi, *viz.*, that he was elsewhere when the burglary occurred, that he had committed no theft, and that he had possessed a matching earring for several years and it was not the one the State brought charges against him for having stolen.

The instant case is clearly distinguishable from *Doby* and *Roberts*. Appellant was charged with attempted capital murder and, at trial, he requested lesser instructions on aggravated assault and assault in the first degree. Those lesser crimes are defined as follows:

Aggravated Assault—(1) A person commits aggravated assault if, under circumstances manifesting extreme indif-

---

[1] While not relevant here, Doby also was convicted of theft by receiving a pistol.

ference to the value of human life, he *purposely* engages in conduct that creates a substantial danger of death or serious physical injury to another. [Ark. Stat. Ann. § 41-1604(1) (Repl. 1977) (emphasis supplied).]

Assault in the First Degree—(1) A person commits assault in the first degree if he *recklessly* engages in conduct which creates a substantial risk of death or serious physical injury to another person. [Ark. Stat. Ann. § 41-1605(1) (Repl. 1977) (emphasis supplied.)]

The definition of purposeful conduct and reckless conduct is set out in Ark. Stat. Ann. § 41-203(1) and (3):

(1) "Purposely." A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

(3) "Recklessly." A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

When considering whether the evidence reasonably warrants giving instructions on the two foregoing crimes of aggravated assault and assault in the first degree, we first are met with the fact that appellant never denied that he had reached into his vehicle and retrieved a pistol from under his car's front seat. Instead, appellant's defense was based largely on why he grabbed his pistol when he did and what he intended to do with it after having retrieved it. Appellant's and Officer Duran's testimonies were much the same until that crucial point. It was only after appellant withdrew the pistol from the car did their stories differ in any significant way. Undoubtedly, the jury, in view of the stories given by appellant and Duran, could have believed that appellant (1) pointed the pistol at the officer and did or did not pull the trigger, (2) pointed the pistol in the air and either pulled or did not pull the trigger, or (3) explained or did not explain to the officer that the gun was inoperative. Appellant's and Duran's

versions of what transpired give rise not only to whether appellant was guilty or innocent of intending to commit attempted capital murder, but they also raise issues as to whether appellant may have either purposely or recklessly committed the respective crimes of aggravated assault or assault in the first degree. Obviously, appellant's action of retrieving his pistol from within his vehicle with Officer Duran standing by posed a substantial danger or risk that could have resulted in death or serious physical injury. Unquestionably, appellant's conduct, under the circumstances variously described, could have been determined as intentional, purposeful or reckless, depending upon what inferences a jury might draw from the stories (or combinations thereof) given by the officer and appellant. The evidence and the defense offered by appellant here are not the same "all or nothing" situations posed in the *Doby* and *Roberts* cases. Accordingly, we are compelled to reverse for the trial court's failure to give the lesser included instructions requested by appellant.

Of the remaining points raised by appellant, we need only discuss the one concerning the testimony given by the police officer who tested appellant's pistol. Appellant's other arguments concern the lack of notice given him regarding certain State evidence that the trial judge allowed to be admitted at trial. Because a retrial of this cause remedies those notice and admissibility issues, we restrict our further review only to the issue that remains a viable one: the admissibility of the expert testimony of Sergeant Bradshaw.

When the prosecution called Sergeant Bradshaw to testify about the test he had performed with the pistol, counsel for appellant notified the court that he questioned whether Bradshaw could testify as an expert. No objection was made at that time, as counsel stated his objection would depend upon the nature of Bradshaw's testimony. Bradshaw testified that he had nineteen years experience as a state trooper, had spent many hours on the firing range, and had been a weapons instructor for three years. The State did not ask that he be declared an expert, but continued to question him about the test performed on the pistol. Towards the close of direct examination, appellant's counsel objected to the testimony on the ground that Bradshaw had not been declared an expert by the court. The court responded that it found Bradshaw to be a firearms expert. The objection was then

withdrawn.

Bradshaw testified about how he performed the test, and then testified that the indentations made by the firing pin of the pistol on the casings of the bullets he fired and attempted to fire looked like those on the casings and bullets in the pistol when it was taken from the scene of the altercation between Duran and appellant. At the close of Bradshaw's testimony, counsel for appellant renewed his objection on the basis that Bradshaw had not been qualified as an expert on microscopic examination. The court stated that it had not found Bradshaw to be an expert, except to the extent of his qualifications for performing the test on the weapon, and that his testimony on the similarity in appearance of the firing pin indentations was lay testimony.

In appellant's cross-examination of Sergeant Bradshaw, it was made clear that he was not testifying about any scientific identification of the two sets of bullets and casings. In fact, Bradshaw testified clearly that he could not say that the indentations were the same. Appellant has cited no authority to convince us there was error here. Thus, we find no error in the trial court's ruling on this evidentiary point.

For the reasons stated above, we reverse and remand for the trial court's failure to give the lesser included instructions on the offenses of aggravated assault and assault in the first degree.

HICKMAN, J., dissents.